# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS

CLAUDINA SUAZO GARCIA,

        Plaintiff,

v.

HY CITE CORPORATION

        Defendant.

Case No.: 2:26-cv-02226

**JURY TRIAL DEMANDED**

## COMPLAINT

Claudina Suazo Garcia ("Plaintiff") brings this action on an individual basis, against HY Cite Corporation ("Defendant" or "HY Cite") for actual, statutory, and punitive damages, costs, and attorneys' fees under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., arising from HY Cite's failure to reasonably investigate Plaintiff's dispute and its verification of an account that belonged to another consumer.

## INTRODUCTION

1. Plaintiff is a Florida consumer whose Equifax credit file was contaminated with a HY Cite/Royal Prestige account that she never opened, used, authorized, or owed.

2. After discovering the account while attempting to obtain a mortgage, Plaintiff contacted HY Cite. HY Cite advised her that the information associated

1/15

with the account contained personal identifying information different from hers and instructed her to dispute the account so that it could be removed.

3.      Plaintiff then disputed the account with Equifax. Equifax notified HY Cite through an Automated Consumer Dispute Verification ("ACDV") that Plaintiff claimed identity fraud, did not recognize the account, and had been told by HY Cite that the account contained different personal identifying information.

4.      HY Cite nevertheless verified the account as reported. Even more revealing, in the same ACDV response HY Cite supplied a Miami address that never belonged to Plaintiff and changed the consumer's date of birth from Plaintiff's June xx, 199x date of birth to September xx, 1989—the date of birth associated with the other consumer.

5.      HY Cite's own response thus confirmed the precise mismatch Plaintiff disputed while simultaneously representing that the account belonged to Plaintiff. A reasonable investigation of HY Cite's application, contract, delivery, payment, contact, and identity records would have established that the account belonged to someone else.

6.      Because HY Cite verified the account rather than delete it, the inaccurate tradeline remained in Plaintiff's Equifax file and was republished to her mortgage lender after the reinvestigation, prolonging the obstruction of Plaintiff's mortgage application and causing continuing financial and emotional harm.

## PARTIES

7.     Claudina Suazo Garcia ("Plaintiff") is a natural person residing in Fort Myers, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

8.     Defendant HY Cite Corporation ("Defendant" or "HY Cite") is a corporation with a principal place of business located at 3252 Pleasant View Road, Middleton, WI. Defendant can be served at its registered agent for service Corporation Service Company at 1201 Hays Street, Tallahassee, FL 32301.

9.     HY Cite does business in Florida and furnished information concerning the disputed HY Cite/Royal Prestige account to Equifax Information Services, LLC ("Equifax").

10.    HY Cite is identified as the grantor of the disputed account on the ACDV and participates in the consumer-reporting system by furnishing account information to Equifax.

11.    HY Cite is a "Furnisher" as defined in 12 CFR 1022.41.  HY Cite regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.  A data furnisher, such as HY Cite, is an entity that reports information about consumers to consumer reporting agencies ("CRAs"), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and

data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the FCRA.

13.     This Court has personal jurisdiction over HY Cite because Plaintiff's claim arises from HY Cite's tortious post-notice conduct purposefully directed into Florida, including its verification and transmission of inaccurate credit information concerning a Florida consumer after receiving notice of her dispute, and HY Cite has established minimum contacts within the state of Florida by targeting and contracting with Florida consumers.

14.     Plaintiff's claim arises directly from HY Cite's post-notice conduct directed toward Florida. After receiving notice concerning a Florida consumer, HY Cite verified and transmitted the disputed information through the ACDV system with the knowledge and expectation that the information would remain in Plaintiff's Florida credit file and be used by creditors evaluating her in Florida.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in or were directed to this District, including Plaintiff's receipt and review of her consumer report, her submission of the dispute, HY Cite's verification of the

disputed account concerning her, the subsequent dissemination of the account to her mortgage lender, and the resulting injury.

## FACTUAL ALLEGATIONS

### Plaintiff Discovers the Mixed HY Cite Account

16. In or about November 2025, Plaintiff and her husband sought a mortgage so they could purchase a home for their family, including their two-year-old daughter.

17. On November 11, 2025, Plaintiff submitted a mortgage application to Home Mortgage Alliance Corp. ("HMA") and authorized HMA to obtain her consumer reports.

18. Equifax furnished a consumer report about Plaintiff to HMA. HMA advised Plaintiff that her application could not proceed because her Equifax report reflected a low credit score and instructed her to review her credit file.

19. When Plaintiff reviewed her Equifax credit file, she discovered an account identified as HY Cite Corporation/Royal Prestige, account ending in 0074 which did not belong to her (the "Mixed Account"). The Mixed Account was reported as opened in April 2025, with a high credit of $1,577, and a credit utilization of 94%.

20.     Plaintiff did not open, authorize, use, benefit from, or incur any obligation on the Mixed Account. Plaintiff has never maintained an account with HY Cite or Royal Prestige.

21.     The Mixed Account belongs to an unrelated consumer, Claudia Yamilet Suazo Garcia (the "Mixed Consumer"), who has a different first name, middle name, Social Security number, and date of birth.

22.     Equifax also associated Plaintiff with an address at xxxx Northwest xxth Street, Apartment x, Miami, Florida 33142 (the "Miami Address"). Plaintiff never lived at or used the Miami Address.

23.     The substantial balance and high utilization associated with the Mixed Account materially impaired Plaintiff's credit profile and interfered with her ability to proceed with the mortgage.

### Plaintiff Notifies HY Cite and Disputes the Account

24.     Before submitting her dispute to Equifax, Plaintiff contacted HY Cite directly and explained that she did not recognize the Mixed Account. Plaintiff reasonably believed that she was a victim of identity theft.

25.     HY Cite advised Plaintiff that the request or application associated with the account contained personal identifying information different from hers. HY Cite further advised Plaintiff to submit a credit-report dispute so that the account could be removed.

26. On November 25, 2025, Plaintiff submitted a formal dispute to Equifax concerning the Mixed Account and the Miami Address. Plaintiff identified herself and provided her correct identifying information.

27. Equifax coded Plaintiff's dispute as Code 020: "I am a victim of true identity fraud and believe this item was opened fraudulently."

28. Equifax then transmitted an ACDV to HY Cite requesting that HY Cite investigate whether the Mixed Account belonged to Plaintiff and whether the furnished information was accurate.

29. The ACDV also expressly informed HY Cite: "CX STATES THAT SHE DOESNT RECOGNIZE THE ACCOUNT AND SHE ALREADY SPOKE TO THE LENDER AND THEY TOLD HER THAT THE REQUEST HAD DIFFERENT PII FOR HER, LENDER ADVISED TO SUBMIT DISPUTE SO THAT THEY CAN REMOVE IT."

30. The ACDV also provided HY Cite with Plaintiff's name, her Fort Myers address, her Social Security number, and her correct date of birth of June 25, 1991.

31. HY Cite therefore received notice not merely of a generic disagreement, but of a specific identity and ownership dispute supported by material mismatches in personal identifying information and HY Cite's own prior communication with Plaintiff.

**HY Cite Verifies the Account Despite Confirming the Mismatched Identity**

32.    On December 18, 2025, HY Cite, through its designated responder, returned the completed ACDV to Equifax.

33.    HY Cite selected the response code "Verified As Reported." It did not select "Delete Account."

34.    In the same response, however, HY Cite did not confirm that Plaintiff's identifying information matched the account records. Instead, HY Cite supplied the Miami Address as the consumer's modified address and supplied September xx, 1989 as the consumer's modified date of birth.

35.    The Miami Address never belonged to Plaintiff, and the September xx, 1989, date of birth is not Plaintiff's date of birth. Both identifiers were materially inconsistent with the Fort Myers address and June xx, 199x date of birth that Equifax transmitted for Plaintiff.

36.    HY Cite's response therefore revealed on its face that the account records did not match Plaintiff's identity. Yet HY Cite verified that the account was Plaintiff's and should remain in her Equifax file.

37.    HY Cite possessed or had ready access to the records necessary to determine the identity of the actual obligor, including the original application, sales contract, signatures, delivery information, addresses, date of birth, telephone

numbers, email addresses, payment information, communications, and any identity-verification records associated with the account.

38. A reasonable investigation would have compared the identifying information in HY Cite's account records to the identifying information Equifax provided for Plaintiff, reviewed the records bearing on who applied for and received the merchandise, and accounted for Plaintiff's prior direct contact with HY Cite.

39. Upon information and belief, HY Cite failed to perform those basic investigative steps, failed to reconcile the conflicting dates of birth and addresses, and instead relied on a superficial name-based match even though the names were not identical.

40. Upon information and belief, HY Cite also failed to contact Plaintiff, the seller or distributor, or the individual whose identifying information and Miami Address appeared in its records before verifying the account.

41. HY Cite failed to report to Equifax that the account could not be verified as belonging to Plaintiff, failed to delete the account, and failed to modify or permanently block the inaccurate information.

42. HY Cite's verification caused Equifax to communicate to Plaintiff on December 18, 2025 that the Mixed Account had been verified and would remain in her credit file.

43. HY Cite failed to reasonably reinvestigate Plaintiff's dispute.

44.    HY Cite violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation regarding the disputed information, failing to review all relevant information available to it, failing to correct, modify, or delete the disputed information, and failing to recognize that the disputed HY Cite Account did not belong to Plaintiff.

### Continued Publication and Plaintiff's Damages

45.    On January 12, 2026, after HY Cite's verification, Plaintiff asked HMA to obtain her consumer reports again so that she could proceed with the mortgage.

46.    Equifax furnished another consumer report about Plaintiff to HMA. The Mixed Account remained on that report because HY Cite had verified it rather than report that it did not belong to Plaintiff.

47.    HY Cite's post-notice verification and the resulting continued publication of the Mixed Account prevented Plaintiff and her husband from moving forward with their mortgage application and deprived them of the opportunity to purchase a home.

48.    Purchasing a home had been a longstanding goal for Plaintiff. The continued obstruction of the mortgage process caused Plaintiff substantial disappointment, anxiety, frustration, and distress, including the feeling that she was letting down her husband and young child.

49.    At the time Plaintiff first sought the mortgage, she paid approximately $1,475 per month in rent. Because she could not proceed with the home purchase, Plaintiff

remained in the rental market and, on March 5, 2026, moved to another apartment with rent of approximately $1,750 per month.

50. Plaintiff has therefore incurred increased housing expenses and has lost the opportunity to build equity and obtain the financial and personal benefits of homeownership.

51. Further, as a result of Defendant's unreasonable reinvestigation, on November 19, 2025, Plaintiff applied for a credit card with Wells Fargo but was denied due to information reported by Equifax.

52. Specifically, Wells Fargo's adverse action notice provided the following reasons for denying Plaintiff's credit application: "Balance-to-credit limit ratio on revolving accounts is too high," "Length of time of the accounts," "Length of time of revolving accounts," and "Ratio between loan balances and loan amounts too high."

53. Upon information and belief, these stated reasons for denial—specifically the high balance-to-limit ratio and debt-to-loan ratios—were directly and proximately caused by the inaccurate Mixed Account which was reporting with a 94% credit utilization rate.

54. The Mixed Account also caused a substantial reduction in Plaintiff's Equifax credit score and impaired her ability to use and benefit from her actual credit history.

55. As a direct and proximate result of HY Cite's post-notice conduct, Plaintiff suffered actual damages, including increased housing expenses, loss of credit opportunity, impairment of her credit standing, lost time, effort and expense attempting to correct the reporting, and emotional distress, frustration, anxiety, humiliation, and embarrassment.

**HY Cite's Conduct Was Willful or, Alternatively, Negligent**

56.    HY Cite received a detailed dispute and specifically advising that HY Cite's own records contained different personal identifying information.

57.    HY Cite knew from Plaintiff's prior direct contact that she denied opening the account and that the identifying information associated with the account differed from hers.

58.    HY Cite's ACDV response itself documented two dispositive mismatches—a different address and a different date of birth—yet Hy Cite still verified the account as belonging to Plaintiff.

59.    Verifying an account as belonging to a consumer while simultaneously reporting material identity information belonging to someone else presented an obvious and unjustifiably high risk that HY Cite was violating its duties under § 1681s-2(b) and causing false information to remain in Plaintiff's credit file.

60.    HY Cite consciously disregarded that known or obvious risk by verifying the Mixed Account without resolving the conflicting personal identifiers or examining readily available records that would have shown who actually opened and received the benefit of the account.

61.    HY Cite's violations were therefore knowing or reckless and willful within the meaning of 15 U.S.C. § 1681n. Alternatively, HY Cite failed to exercise reasonable care and was negligent within the meaning of 15 U.S.C. § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2b
## Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer

62.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

63.    Plaintiff disputed the completeness and accuracy of the Mixed Account with Equifax, a consumer reporting agency.

64.    Equifax notified HY Cite of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(2), thereby triggering HY Cite's duties under 15 U.S.C. § 1681s-2(b).

65.    After receiving notice, HY Cite was required to conduct an investigation regarding the disputed information; review all relevant information provided by Equifax; report the results to Equifax; report any finding that the information was incomplete or inaccurate to every other consumer reporting agency to which Hy Cite had furnished the information; and modify, delete, or permanently block information that was inaccurate, incomplete, or could not be verified.

66.    HY Cite violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation; failing to meaningfully review and reconcile the relevant identifying information; verifying the account despite material conflicts in name, address, Social Security number, and date of birth; failing to accurately report the results of its investigation; and failing to modify, delete, or permanently block the Mixed Account.

67.     HY Cite's unreasonable verification caused the Mixed Account to remain in Plaintiff's Equifax credit file and to be disseminated to HMA and Wells Fargo after the investigation, resulting in the concrete financial, credit, and emotional injuries alleged above.

68.     As a result of Defendant HY Cite's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

69.     HY Cite's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, HY Cite was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

70.     Plaintiff is entitled to recover attorneys' fees and costs from HY Cite in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest as permitted by law, and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED on July 23, 2026.

By:/*s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Claudina Suazo Garcia*

15/15